IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION

| | |
|---|---|
| MARY ANN ZINNEL, | |
| Plaintiff, | No. 12-CV-4043-DEO |
| v. | |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ORDER |
| Defendant. | |

---

## I.  INTRODUCTION

This matter is before the Court pursuant to Mary Ann Zinnel's (hereinafter Ms. Zinnel) Complaint, requesting disability benefits under Title II of the Social Security Act (the "Act"), 42 U.S.C. §§ 401 *et seq.*  This Court has authority to review the final decision of the Commissioner of the Social Security (Commissioner) pursuant to 42 U.S.C. § 405(g).  The parties appeared by phone for hearing on December 11, 2012.  After hearing, the Court took the matter under advisement and now enters the following.

## II.  FACTUAL BACKGROUND

At the time of the hearing, Ms. Zinnel was 47 years old. She is married and lives with her husband near Haywood, Iowa. She has a GED and has held a variety of manual type jobs over the years, including:  retail, delivery, production and jobs

on the family farm.   Her disability claim arises out of a stroke she suffered in 2006.

## III.   PROCEDURAL HISTORY

On or about November 10, 2008, Ms. Zinnel filed an application for SSD benefits, alleging that her disability began on December 15, 2006.   The claim was denied on January 26, 2009.   Ms. Zinnel filed a timely request for reconsideration, and on May 5, 2009, the request was denied. Ms. Zinnel filed a request for hearing in a timely fashion, and a hearing was held in Sioux City, Iowa, on August 19, 2010, before the Hon. Ronald Lahners, Administrative Law Judge (hereinafter "ALJ").   On September 9, 2010, the ALJ found that Ms. Zinnel's claim should be denied.   Ms. Zinnel filed a timely Request for Review of Hearing Decision, and on February 23, 2012, the Appeals Council denied the Request for Review (Tr. 1, 4).   Ms. Zinnel proceeded to file a request for judicial review with this Court.

Under the authority of the Social Security Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled and entitled to benefits.   20 C.F.R. § 404.1520.   The five successive steps are:   (1) determination

2

of whether a plaintiff is engaged in "substantial gainful activity," (2) determination of whether a plaintiff has a "severe medically determinable physical or medical impairment" that lasts for at least 12 months, (3) determination of whether a plaintiff's impairment or combination of impairments meets or medically equals the criteria of a listed impairment, (4) determination of whether a plaintiff's Residual Functional Capacity (RFC) indicates an incapacity to perform the requirements of his past relevant work, and (5) determination of whether, given a Plaintiff's RFC, age, education and work experience, a plaintiff can "make an adjustment to other work."  20 C.F.R. § 404.1520(4)(I-v).

At step one, if a plaintiff is engaged in "substantial gainful activity" within the claimed period of disability, there is no disability during that time.  20 C.F.R. § 404.1520(a)(4)(I).  At step 2, if a plaintiff does not have a "severe medically determinable physical or mental impairment" that lasts at least 12 months, there is no disability.  20 C.F.R. § 404.1520(a)(4)(ii).  At step 3, if a plaintiff's impairments meet or medically equal the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, and last at least 12 months, a plaintiff is deemed disabled.  20 C.F.R. § 404.1520(e).  Before proceeding to step

4 and 5, the ALJ must determine a plaintiff's Residual Functional Capacity [RFC]. RFC is the "most" a person "can still do" despite their limitations. 20 C.F.R. § 404.1545(a)(1). The RFC an ALJ assigns a plaintiff has been referred to as the "most important issue in a disability case . . . ." Malloy v. Astrue, 604 F. Supp. 2d 1247, 1250 (S.D. Iowa 2009) (citing McCoy v. Schweiker, 683 F.2d 1138, 1147 (8th Cir. 1982)(en banc)). When determining RFC, the ALJ must consider all of the relevant evidence and all of the Plaintiff's impairments, even those which are not deemed severe, as well as limitations which result from symptoms, such as pain. 20 C.F.R. § 404.1545(a)(2) and (3). An ALJ "may not simply draw his own inferences about a plaintiff's functional ability from medical reports." Strongson v. Barnhart, 361 F.3d 1066, 1070 (8th Cir. 2004).

At step 4, if, given a plaintiff's RFC, a plaintiff can still perform their past relevant work, there is no disability. 20 C.F.R. § 404.1520(a)(4)(iv). At step 5, if, given a plaintiff's RFC, age, education, and work experience, a plaintiff can make an adjustment to other work, there is no disability. 20 C.F.R. §§ 404.1520(a)(4)(v) and 416.920(a)(4)(v). This step requires the ALJ to provide "evidence" that a plaintiff could perform "other work [that]

4

exists in significant numbers in the national economy." 20
C.F.R. § 404.1560(c)(2).   In other words, at step 5, the
burden of proof shifts from a plaintiff to the Commissioner of
the S.S.A..   Basinger v. Heckler, 725 F.2d 1166, 1168 (8th
Cir. 1984).   The ALJ generally calls a Vocational Expert (VE)
to aid in determining whether this burden can be met.

In this case, the ALJ applied the appropriate methodology
and determined that Ms. Zinnel is not under a disability.
Specifically the ALJ found that:

> Through the date last insured, the claimant
> had the following severe impairments:
> residuals of cerebrovascular accident,[1]
> status post right internal carotid artery
> stent placement.
>
> ...[T]he claimant reported taking
> medication for numerous health issues,
> including high blood pressure, arthritis
> pain, high cholesterol, and
> allergies...Prior to the alleged onset
> date, the claimant sought chiropractic
> services for headaches and back, knee, and
> neck pain...The claimant also reported
> having bone spurs on the bottom of her feet
> and bad teeth...The overall evidence does
> not indicate these conditions are
> severe....The undersigned finds the
> claimant's mental impairments, considered
> singly and in combination, did not cause

---

[1]Commonly refereed to as a stroke.

more than minimal limitation in her ability
to perform basic mental work activities and
were therefore non-severe...

Tr. 13-14.

Through the date last insured, the claimant
did not have an impairment or combination
of impairments that met or medically
equaled one of the listed impairments in 20
CFR Part 404, Subpart P, Appendix 1 (20 CFR
404.1520(d), 404.1525, and
404.1526.)...After careful consideration of
the entire record, the undersigned finds
that through the date last insured, the
claimant had the residual functional
capacity to lift 20 pounds occasionally and
10 pounds frequently, and in an 8-hour day
she could sit for 6 hours, stand for 6
hours, and with normal breaks complete the
workday.  She normally did not use a cane
for assistance but needed to work on level
ground and not climb ladders, scaffolds, or
anything involving heights due to balance
problems.  She could occasionally climb
stairs, stoop, kneel and crouch.  She could
not perform fine fingering work on constant
basis...

Tr. 14-15.

The claimant alleged disability due to the
residual effects of a stroke...She reported
having trouble with focus and
concentration, needing periodic rest
breaks, and not being able to be on her
feet for long periods.  She described
having pain symptoms on and off during the
day that lasted a couple of hours, right
sided weakness, and difficulty walking...
After careful consideration...the
undersigned finds the claimant's medically
determinable impairments could reasonably
be expected to cause the alleged symptoms;
however, the claimant's statements

6

concerning the intensity, persistence, and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment...Through the date last insured, the claimant was capable of performing past relevant work as a retail store manager.  This work did not equire the performance of work-related activities precluded by the claimant's residual functional capacity...

Tr. 16-18.

## IV.  STANDARD OF REVIEW

This Court's role in review of the ALJ's decision requires a determination of whether the decision of the ALJ is supported by substantial evidence on the record as a whole. See 42 U.S.C. § 405(g); <u>Finch v. Astrue</u>, 547 F.3d 933, 935 (8th Cir. 2008).  Substantial evidence is less than a preponderance but enough that a reasonable mind might find it adequate to support the conclusion in question.  <u>Juszczyk v. Astrue</u>, 542 F.3d 626, 631 (8th Cir. 2008) (citing <u>Kirby v. Astrue</u>, 500 F.3d 705, 707 (8th Cir. 2007)).  This Court must consider both evidence that supports and detracts from the ALJ's decision.  <u>Karlix v. Barnhart</u>, 457 F.3d 742, 746 (8th Cir. 2006) (citing <u>Johnson v. Chater</u>, 87 F.3d 1015, 1017 (8th Cir. 1996)).  In applying this standard, this Court will not reverse the ALJ, even if it would have reached a contrary decision, as long as substantial evidence on the record as a

whole supports the ALJ's decision.  <u>Eichelberger v. Barnhart</u>, 390 F.3d 584, 589 (8th Cir. 2004).  The ALJ's decision shall be reversed only if it is outside the reasonable "zone of choice."  <u>Hacker v. Barnhart</u>, 459 F.3d 934, 936 (8th Cir. 2006) (citing <u>Culbertson v. Shalala</u>, 30 F.3d 934, 939 (8th Cir. 1994)).

This Court may also ascertain whether the ALJ's decision is based in legal error.  <u>Lauer v. Apfel</u>, 245 F.3d 700, 702 (8th Cir. 2001).  If the ALJ applies an improper legal standard, it is within this Court's discretion to reverse his/her decision.  <u>Neal v. Barnhart</u>, 405 F.3d 685, 688 (8th Cir. 2005); 42 U.S.C. 405(g).

## V.  ISSUES

Ms. Zinnel argues that the ALJ's determination is not supported by substantial evidence.  Specifically, Ms. Zinnel argues that the ALJ erred in determining that her testimony was not credible, that she was not disabled as defined in section 11.04 of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.5, and that she does not have the residual functional capacity to work.  The Court will consider each issue in turn.

## VI.  ANALYSIS

In order for a plaintiff to qualify for disability benefits, they must demonstrate they have a disability as defined in the Social Security Act [hereinafter the Act].  The Act defines a disability as an:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . .

42 U.S.C. § 423(d)(1)(A).

### A.  Credibility

Ms. Zinnel asserts that the ALJ did not properly assess her and her husband's credibility.  Docket No. 7, p. 8, 11-12. An ALJ must give reasons if, as in this case, he does not fully credit the claimant's testimony (Tr. 23-24).  See Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984); 20 C.F.R. §§ 404.1529, 416.929 (discussing the process for evaluating symptoms); Social Security Ruling (SSR) 96-7p, 1996 WL 374186 (S.S.A. 1996) (discussing credibility).  In his decision, the ALJ found that Ms. Zinnel's complaints were not entirely credible for several reasons (Tr. 16-18).  It is true that credibility questions are "primarily for the ALJ to decide."  Holmstrom v. Massanari, 270 F.3d 715, 721 (8th Cir.

2001).  However, this Court must still consider whether the ALJ's determinations are supported by substantial evidence. That includes the ALJ's determinations regarding credibility.

To analyze a plaintiff's subjective complaints of pain, the ALJ considers the following elements known as the "Polaski" factors: 1) the claimant's daily activities; 2) the duration, frequency, and intensity of pain; 3) dosage, effectiveness, and side effects of medication; 4) precipitating and aggravating factors; and 5) functional restrictions.  See Polaski, 739 F.2d at 1322; see also 20 C.F.R. §§ 404.1529, 416.929.

The ALJ stated that the opinion of Dr. O'Shea did not support Ms. Zinnel's testimony.  The ALJ stated that she was noncompliant with treatment, she could do more than she claimed, and examination did not support her testimony.  See Tr. 16-18.  However, Ms. Zinnel argues that "the testimony from Zinnel and her husband indicated that she suffered from significant problems with fatigue and memory loss.  The record as a whole supports these assertions, and the ALJ erred in failing to give them appropriate weight."  Docket # 7, p. 12. In making that argument, Ms. Zinnel relies on the case of Holmstrom v. Massanari, 270 F.3d 715 (8th Cir. 2001).  In that case, the ALJ determined that the plaintiff's testimony was

10

not credible or consistent with the medical opinions. However, the Circuit Court disagreed and said that:

> Although the record credited by the ALJ .
> . . . may not contain sufficient objective
> medical evidence to support Holmstrom's
> subjective complaints, the record as a
> whole does support them.  The record as a
> whole, including Virginia Holmstrom's
> testimony and all the medical records,
> corroborates Holmstrom's subjective
> complaints in such a qualitative manner as
> to negate the inconsistencies pointed out
> by the ALJ... When the corroborative
> evidence is considered, Holmstrom's
> subjective complaints are credible.  When
> Holmstrom's credible testimony as to his
> pain induced limitations is properly
> considered, the RFC determined by the ALJ
> is insufficient; it does not include all of
> Holmstrom's impairments, limitations, and
> restrictions.

Id. at 722.

The Court agrees with the Plaintiff.  There is no dispute that Ms. Zinnel suffered a severe stroke which resulted in numerous challenges for her and her family.  There is no medical testimony or evidence contained in the record that repudiates Ms. Zinnel's essential assertion that she continues to suffer from the stroke's after effects.  Rather, the primary dispute regards the degree of those after effects.

Dr. Lassen's opinion substantiates Ms. Zinnel's testimony.[2] As a treating physician, his opinion was entitled to great weight. <u>Lauer v. Apfel</u>, 245 F.3d 700, 705 (8th Cir. 2001). Additionally, other medical reports, including that of Dr. Baker, reaffirm Ms. Zinnel's essential complaints,[3] as does the testimony of Ms. Zinnel's husband. Ms. Zinnel consistently complained of fatigue as a result of her stroke to medical professionals.[4] Even the medical reports that the Defendant relies upon note that Ms. Zinnel had lingering

---

[2]Dr. Lassen stated that Ms. Zinnel has chronic upper and lower extremity weakness, abnormal sensation with no improvement expected. Tr. 649. He also stated that she had limited fine motor skills, tremors, and fatigue. <u>Id.</u> at 648. Finally, Dr. Lassen stated that Ms. Zinnel would have a hard time working or doing chores without breaks and could not maintain a position for longer than 15 minutes. <u>Id.</u> at 649-651.

[3]Dr. Michael Baker, a psychologist in Sioux City, noted that she requires naps in the afternoon, and that her husband did most of household shopping and finances. Tr. 489. He also noted that Ms. Zinnel's ability to recall is poor, that she suffers from difficulty with concentration, and she is not able to handle stress in the workplace. <u>Id.</u> at 490. He stated that, "Client does walk with a shuffling gait. She did not seem to be responding to internal stimuli...recall is poor. Concentration is only fair...considering her initial reaction to his interview, she might not be able to handle stress in the workplace."

[4]See, as an example, the report of Dr. Horstman, where Ms. Zinnel complained of fatigue and dizziness. Tr. 465. See also the report of Julie Beehler, nurse practitioner, who stated that Ms. Zinnel complained of fatigue. Tr. 453.

symptoms as a result of her stroke.[5]   Accordingly, substantial evidence does not support a finding that Ms. Zinnel is not credible.   Rather, the ALJ should have considered her testimony regarding the severity of her symptoms and her ability to work.

Additionally, the ALJ seemed to rely heavily on the fact that Ms. Zinnel smokes and drinks soda.   As stated in the Defendant's brief:

> the ALJ noted plaintiff was instructed to stop smoking and to decrease her caffeine use (Tr. 17, 409, 470, 472).   However, plaintiff continued to smoke and was still drinking four sodas a day in January 2009 (Tr. 45, 286, 288, 305, 410, 413, 419-20, 423, 427, 457, 534, 578; see also Tr. 668 (noting in December 2010 that plaintiff "smokes one pack per day of cigarettes and drinks a lot of caffeine.")).   If plaintiff's impairment was as severe as alleged, she would be expected to follow treatment recommendations more closely.

Docket #8, p. 19-20.

It is true "[a] failure to follow a recommended course of treatment . . . weighs against a claimant's credibility." Guilliams v. Barnhart, 393 F.3d 798, 802 (8th Cir. 2005). However, it is also true that it is not the job of the ALJ, or this Court, to parse every personal decision Ms. Zinnel made.

---

[5]See Dr. Bacharach's report at Tr. 441, stating that Ms. Zinnel had a tremor.

While it is relatively undisputed that stopping smoking and drinking less soda are positive life choices, there is no clear indication in the record that those choices are tied to Ms. Zinnel's conditions, other than perhaps exacerbating her headaches.  It is clear that the ALJ, and now the Defendant, rely too heavily on the fact that Ms. Zinnel drank pop and smoked in reaching the determination that she is not credible.

For those reasons, the ALJ's credibility findings are not supported by substantial evidence.  In fact, substantial evidence supports a finding that Ms. Zinnel testified credibly about her condition and the effects it has on her life and her ability to work.

**B.   11.04 Analysis**

In her brief, Ms. Zinnel argues the ALJ erred by determining that she did not meet the criteria of section 11.04 of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.5.  For the reasons discussed below, this Court agrees.

The ALJ found that substantial evidence did not support a finding that plaintiff met or equaled any listing.  Tr. 15. The Eighth Circuit Court of Appeals has held that, "[t]he burden of proof is on the plaintiff to establish that his or her impairment meets or equals a listing."   <u>Johnson v.</u>

*Barnhart*, 390 F.3d 1067, 1070 (8th Cir. 2004).   Further, a claimant must show that her impairment matches all of the specified medical criteria of a listing.   See *Boettcher v. Astrue*, 652 F.3d 860, 863-64 (8th Cir. 2011).   The applicable listing provides "11.04 Central Nervous System Vascular Accident:   With one of the following more than 3 months post-vascular accident:   (A). Sensory or motor aphasia resulting in ineffective speech or communication; or (B). Significant and persistent disorganization of motor function in two extremities, resulting in sustained disturbance of gross and dexterous movements, or gait and station (see 11.00(c))."   20 C.F.R. Pt. 404, Subpt. P, App. 1, § 11.04.

Subsection (A) of this listing does not apply as plaintiff admits she does not have ineffective speech or communication.   See Docket #7, p.   10.   To meet the requirements of subsection (B), Ms. Zinnel must show that she has "significant and persistent disorganization of motor function in two extremities, resulting in sustained disturbance of gross and dexterous movements, or gait and station."[6]   20 C.F.R. Pt. 404, Subpt. P, App. 1, § 11.04.   The assessment of "[p]ersistent disorganization of motor function

---

[6]As indicated by the counsel during the hearing, station in this context means standing.

15

. . . depends on the degree of interference with locomotion and/or interference with the use of fingers, hands, and arms." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 11.00(c).

The ALJ determined that Ms. Zinnel did not have an impairment as described by 11.04. However, Ms. Zinnel argues that, "Dr. Lassen's report (Tr. 650, 652) supports a conclusion that she suffers from significant and persistent disorganization of motor function in two extremities. He opined that she needs a cane to walk. He confirmed that she suffers from tremors and will frequently drop things. Therefore, Dr. Lassen confirmed that she has significant disorganization in both her hands and her legs as a result of her stroke. The ALJ erred by finding otherwise." Docket #7, p. 10. This Court agrees.

It is undisputed in the record that Ms. Zinnel needs a cane to walk with. While there are suggestion in the record that Ms. Zinnel does not use her cane as much as she should, that does not negate the fact that as a result of the stroke she needs a cane. Additionally, both the medical evidence and the testimony show that Ms. Zinnel has a lingering issue with both her strength and her ability to use her hands to hold things. Even the ALJ concluded that Ms. Zinnel would be unable to do fine work as a result of the stroke.

16

Accordingly, it seems clear that substantial evidence supports a finding that Ms. Zinnel has persistent disorganization of motor function. Thus, it was an error for the ALJ to find substantial evidence supported a finding that Ms. Zinnel was not disabled under 11.04.

During the hearing, the Defendant pointed out that Ms. Zinnel's coverage period only extends to the end of 2008. The parties discussed the applicable legal standard. The Plaintiff cited the case of <u>Bird v. Comm'r of Soc. Sec. Admin.</u>, 699 F.3d 337, 345 (4th Cir. 2012) and the Defendant cited <u>Davidson v. Astrue</u>, 501 F.3d 987 (8th Cir. 2007). The holdings in those cases are not in conflict. In cases such as these, courts can consider retrospective medical opinions. <u>Bird</u>, 699 F.3d at 341. However, the Court can only consider the condition as it existed at the time the plaintiff was covered. See <u>Davidson</u>, 501 F.3d at 989, stating that "[plaintiff's] insured status expired on December 31, 2003, so, like the Commissioner, we consider her condition before that date." This Court has followed those precedents in coming to its conclusion.

Dr. Lassen's report, relied upon by both the Plaintiff and the Court, is dated June 21, 2010, after coverage expired. However, it deals with the conditions arising out of

17

Plaintiff's stroke, which occurred while she had coverage. There is no medical evidence in the record to suggest that Ms. Zinnel's complaints arose after the coverage period ended or that Dr. Lassen was discussing a condition arising after 2008. Accordingly, it is proper retrospective medical evidence that the Court can consider in determining what Ms. Zinnel's condition was during the coverage period. Having considered that evidence, as well as the testimony discussed on pages 9 through 14 above, it is clear that substantial evidence supports a finding that Ms. Zinnel was disabled at the time her coverage expired.

### C.  Past Work and Functional Capacity

As discussed above, the ALJ erred in not crediting Ms. Zinnel's testimony and not finding her disabled under 11.04. Accordingly, the Court need not reach the argument regarding the ALJ's determination that Ms. Zinnel could perform past relevant work.

However, if the Court were to consider that argument, it is clear that the ALJ erred by determining that Ms. Zinnel could perform past relevant work.  The medical record, when considered in light of Ms. Zinnel's credible testimony, establishes that there are no jobs she can perform.  As set out above, Dr. Lassen stated that Ms. Zinnel would need to

18

take frequent unscheduled breaks at work, she would miss more than two days a month, would need to walk with a cane, could not do jobs which would require increased dexterity, and would need to change positions every fifteen minutes.  Tr. 649-651. Substantial evidence does not support a finding that she could return to her prior employment or that she could find a job that would accommodate her condition.

## VII.  CONCLUSION

The Court has the authority to reverse a decision of the Commissioner, "with or without remanding the cause for rehearing," but the Eighth Circuit has held that a remand for award of benefits is appropriate only where "the record 'overwhelmingly supports'" a finding of disability.  42 U.S.C. 405(g); Buckner v. Apfel, 213 F.3d 1006, 1011 (8th Cir. 2000). In this case, the Court finds that remand for the award of benefits is appropriate.  The ALJ's findings are not supported by substantial evidence, but substantial evidence overwhelmingly supports a finding that Ms. Zinnel is disabled.

Application for attorney fees pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412 (EAJA), must be filed within thirty (30) days of the entry of final judgment in this action.  Thus, unless this decision is appealed, if Zinnel's

attorney wishes to apply for EAJA fees, it must be done within thirty (30) days of the entry of the final judgment in this case.

**IT IS SO ORDERED** this 6th day of February, 2013.

Donald E. O'Brien, Senior Judge
United States District Court
Northern District of Iowa